ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

GARY M. RESTAINO
Arizona Bar Number 017450
Chief, Criminal Division

FRANK T. GALATI
Arizona Bar Number 003404
Assistant U.S. Attorney

Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Gary.Restaino@usdoj.gov
Frank.Galati@usdoj.gov

FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 1 3 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

FILED ___ LODGED
RECEIVED ___ COPY

MAR 1 3 2014

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America,

        Plaintiff,

    v.

John Junker

        Defendant.

CR 12 05 1 1 PHX DGC

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, John Junker, hereby agree to dispose of this matter on the following terms and conditions:

**1.**    **PLEA**

The defendant will plead guilty to Count One of the information charging the defendant with a violation of 18 United States Code (U.S.C.) § 371, **Conspiracy**, a Class D felony offense.

**2.**    **MAXIMUM PENALTIES**

    a.    A violation of 18 U.S.C. § 371, is punishable by a maximum fine of **$250,000**, a maximum term of imprisonment of **five years**, or both, and a term of supervised release of **three years**. A maximum term of probation is **five years**.

    b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

        (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

SCANNED

1           (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine

2 is not appropriate;

3           (3)    serve a term of supervised release when required by statute or when a

4 sentence of imprisonment of more than one year is imposed (with the understanding that the

5 Court may impose a term of supervised release in all other cases); and

6           (4)    pay upon conviction a **$100.00** special assessment for each felony count to

7 which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

8     c.    The Court is required to consider the Sentencing Guidelines in determining the

9 defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is free

10 to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for

11 the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

12 **3.**    **COOPERATION REQUIRED**

13     a.    If requested by the United States, the defendant shall meet with representatives of

14 the United States at any reasonable time and place and, in such meetings, shall (i) waive the Fifth

15 Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic

16 whatsoever; and (iii) provide full and complete information about the topics discussed in each

17 interview, if necessary by volunteering information about which no questions are asked.

18     b.    If requested by the United States, the defendant shall deliver to the United States

19 any documents and other items to which the defendant has access.

20     c.    If requested by the United States, the defendant shall testify at any time and place

21 and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

22     d.    All information, evidence, and testimony provided by the defendant pursuant to

23 the cooperation, on any topic whatsoever, shall be truthful, honest, candid, and complete with

24 no knowing and material omissions or false statements.  The defendant shall not attempt to either

25 protect or falsely implicate any person or entity through false information or omission.

26     e.    The United States Attorney's Office for the District of Arizona shall not use

27 directly against the defendant in any criminal proceeding (other than a criminal forfeiture

28 proceeding) any evidence provided by the defendant as part of the cooperation.  Additionally,

pursuant to Section 1B1.8 of the Sentencing Guidelines, the Court shall not use such evidence in determining the defendant's advisory Sentencing Guidelines range. For the avoidance of doubt, however, the United States may (i) make derivative use of evidence provided by the defendant pursuant to the cooperation, and (ii) use such evidence directly against the defendant in any criminal forfeiture proceeding and any administrative or civil proceeding.

f.     Without the prior consent of the United States Attorney's Office for the District of Arizona, the defendant shall not disclose or reveal to any third party the fact that the defendant is cooperating, or the nature of any information that has been obtained by the United States. The defendant shall notify the United States as soon as possible of any such disclosures.

g.     The defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

h.     The defendant shall not violate any local, state, federal or foreign laws. The defendant shall comply with all terms and conditions of the defendant's pre-trial release.

i.     If the United States wishes for the defendant's cooperation to continue, the defendant shall not oppose any motions to continue the defendant's sentencing. The parties contemplate that defendant will not be sentenced until his cooperation with both state and federal authorities is complete. The parties recognize that the granting of a continuance is within the Court's discretion.

## 4.     AGREEMENTS REGARDING SENTENCING

a.     _Recommendation._ Pursuant to Fed. R. Crim. P. 11(c)(1)(B), at sentencing and any other appropriate time, the United States shall bring the nature and extent of the defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons. Due to defendant's truthful cooperation with the United States to this point, and conditioned upon defendant's continued truthful cooperation as delineated in section 3, *supra*, prior to the defendant's sentencing, the United States shall move the Court to depart downward from the Sentencing Guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines.

b.      Non-Binding Recommendations. The defendant understands that Fed. R. Crim. P. 11(c)(1)(B) recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

c.      Stipulations.   Pursuant to Fed. R. Crim. P. 11(c)(1)(C), upon defendant's compliance with the terms of this agreement, the parties agree that any sentence of imprisonment **will not exceed 24 months;** that is, the stipulated range of sentence is probation on the low end and 24 months on the high end. In addition, any sentence of imprisonment shall run **concurrently** with any sentence of imprisonment that may be imposed by another sovereign upon conviction for conduct arising from those matters contained in the Fiesta Bowl Special Committee report of 2010.

The parties, as well as the State of Arizona, agree that prison time, if imposed by both this Court and the Arizona state court, will be served in a federal institution. In furtherance of that agreement, the parties stipulate, with the Court's concurrence, that defendant will be sentenced in federal court before he is sentenced in state court so that prison time, if imposed by this Court, will be served in a federal institution.

d.      Restitution. In light of the provisions of Section 5 (see below) of this plea agreement, no order of restitution need be entered in this matter.

e.      Acceptance of Responsibility.   If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

5.   **AGREEMENT TO COOPERATE WITH THE INTERNAL REVENUE SERVICE**

     a.     The defendant acknowledges his obligation to report and pay tax on all income he received from the Arizona Sports Foundation dba The Fiesta Bowl, and any of its affiliated entities (collectively, "the organization"), including income reflected in any and all amended W-2 forms issued by the organization to him . Nothing contained herein requires defendant to agree with the income stated on amended W-2 forms issued by the Fiesta Bowl organization.

     b.     The defendant will cooperate with the Internal Revenue Service in determining the amount of any tax to be imposed on him individually as a result of any excess benefit transactions, political contributions, or disqualifying lobbying expenses.

     c.     Nothing in this agreement shall be construed in a way that would prevent the defendant from claiming any additional deductions or credits for the tax years at issue, and the defendant shall retain the right to assert any and all defenses in any civil tax audit, controversy, appeal or litigation.

6.   **BREACH OF THE AGREEMENT**

     a.     If the defendant fails to comply with any of the defendant's obligations or promises set forth in the Plea Agreement, the United States may:

          i.     in its sole and absolute discretion, declare any provision of the Plea Agreement null and void, without giving the defendant any right or option to withdraw from the Plea Agreement or the plea of guilty;

          ii.     recommend any sentence, up to and including the statutory maximum sentence;

          iii.     prosecute the defendant, or reinstitute prosecution of the defendant, for any and all crimes committed by the defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

          iv.     use in any manner, and in any proceeding, any evidence provided by the defendant before or after execution of this Plea Agreement; and

          v.     advise the Bureau of Prisons that the defendant is no longer a cooperating witness, and recommend redesignation of the defendant to a higher custodial level.

b.     If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or the defendant has failed to comply with this agreement including whether the defendant has been truthful.

**7.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     This Office shall not prosecute the defendant for any other offenses committed by the defendant, and known by the United States, in connection with matters addressed in the Special Committee Report or the discovery produced by the United States.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office. The United States Attorney for the District of Arizona is unaware of any other investigations or contemplated investigations or prosecutions by any other district or division of the United States Department of Justice.

**8.    COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**9.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the

1  defendant could assert to the indictment or information; and (2) any right to file an appeal, any

2  collateral attack, and any other writ or motion that challenges the conviction, an order of

3  restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the

4  defendant's sentence, including the manner in which the sentence is determined, including but

5  not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and

6  2255. The defendant acknowledges that if the Court has sentenced the defendant according to

7  the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral

8  attack, or other motion the defendant might file challenging the conviction, order of restitution

9  or forfeiture, or sentence in this case.

10  **10.  DISCLOSURE OF INFORMATION**

11       a.    The United States retains the unrestricted right to provide information and make

12  any and all statements it deems appropriate to the U.S. Probation Office and to the Court in

13  connection with the case.

14       b.    Any information, statements, documents, and evidence that the defendant provides

15  to the United States pursuant to this agreement may be used against the defendant at any time.

16       c.    The defendant shall cooperate fully with the U.S. Probation Office.   Such

17  cooperation shall include providing complete and truthful responses to questions posed by the

18  U.S. Probation Office including, but not limited to, questions relating to:

19            i.    criminal convictions, history of drug abuse, and mental illness; and

20            ii.   financial information, including present financial assets or liabilities that

21  relate to the ability of the defendant to pay a fine or restitution.

22  **11.  FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

23       a.    Nothing in this agreement shall be construed to protect the defendant from

24  administrative or civil forfeiture proceedings or prohibit the United States from proceeding with

25  and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary

26  penalties, including restitution imposed by the Court, shall be due immediately upon judgment

27  and subject to immediate enforcement by the United States. If the Court imposes a schedule of

28

7

1   payments, the schedule of payments shall be merely a schedule of minimum payments and shall

2   not be a limitation on the methods available to the United States to enforce the judgment.

3        b.      Nothing in this agreement shall be construed to satisfy, settle, or compromise any

4   civil tax liability, including additions to tax, interest and penalties, that the defendant may owe

5   to the IRS as to his (or the organization's) federal income tax returns.

6   **12.    ELEMENTS**

7        a.      The defendant understands that if the case were to proceed to trial, the government

8   would be required to prove the following elements beyond a reasonable doubt before the

9   defendant could be found guilty of the offense to which the defendant is pleading guilty:

10  **Conspiracy**

11        First, there was an agreement between two or more persons to commit the offense

12  of Making Campaign Contributions in the Name of Another, Making False Statements or

13  Defrauding the United States;

14        Second, the defendant was a member of the conspiracy, knowing of its object and

15  intending to help accomplish it;

16        Third, one of the members of the conspiracy performed at least one overt act for

17  the purpose of carrying out the conspiracy.

18        Additionally, the government must prove by a preponderance of the evidence that

19  defendant's conduct occurred, in whole or in part, in the District of Arizona.

20        b.      The defendant further understands that the following are the elements of the crimes

21  which defendant conspired to commit:

22  **Making Campaign Contributions in the Name of Another**

23        First, a person or persons made contributions to federal political campaigns in the

24  names of others, that is, a person or persons solicited others to donate to federal political

25  campaigns, and subsequently reimbursed the individual contributors;

26        Second, the contributions exceeded $10,000 in at least one calendar year; and

27        Third, the defendant acted knowingly and willfully.

28

**False Statements**

First, a person or persons made a false statement, to wit, a campaign contribution check purporting to come from the person's own funds;

Second, a person or persons willfully provided the check to a political campaign, knowing that it falsely represented that the contribution came from the person's own funds;

Third, the false statement was made in a matter within the jurisdiction of a federal executive branch agency, to wit: the Federal Election Commission; and

Fourth, the statement was material, that is, it had the capacity to influence an agency's actions.

No mental state is required with respect to the fact that a matter is within the jurisdiction of a federal agency.  Ninth Circuit Criminal Jury Instruction § 8.66; United States v. Green, 745 F.2d 1205, 1209-10 (9th Cir. 1984).

**Defrauding the United States**

First, a person or persons defrauded the United States by impairing, impeding, obstructing and defeating the lawful functions and duties of the Internal Revenue Service, to wit: falsely preparing or signing tax-exempt organization Forms 990; and

Second, a person or persons acted through deceitful and dishonest means.

**13.    FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt

I was employed by the Fiesta Bowl organization from on or around 1980 through on or around 1989 as the Assistant Executive Director. I returned to the Fiesta Bowl as Executive Director in early 1990, and I held the top position in the organization until 2011.

The major bowl status of the Fiesta Bowl was threatened by the growing age of Arizona State University's Sun Devil Stadium and the erection of the Dallas Cowboys' Stadium, and in turn the millions of dollars of economic benefit that came to Arizona in hosting major bowl matchups each year.

1    After the failure of the first new stadium effort in the early part of the 21st Century, I and

2    members of the Board of Directors of the Fiesta Bowl came to believe that without a coordinated

3    effort directed at various elected and appointed bodies, including the Arizona Legislature and

4    Arizona's Congressional delegation, there was no guaranty that a new stadium, which was vital

5    to the Fiesta Bowl's continued success, would be achieved.

6    As a result, a decision was made by the Board to engage a consultant to assist the Bowl

7    with legislative affairs. He is referred to here as Lobbyist C. He was also a lawyer. I did not

8    know Lobbyist C before a member of the Board recommended his engagement for the purposes

9    outlined above.

10   Soon after his engagement as an independent contractor, Lobbyist C told me that, in order

11   to assist in the effort to remain on solid footing with those important politicians whose support

12   could be vital in ensuring that a new stadium would be built, in ensuring that the Fiesta Bowl

13   would not be in a disadvantageous position vis-à-vis the other anticipated major tenant of the

14   anticipated new stadium, and in ensuring that the Fiesta Bowl's message to the nation would be

15   strongly supported by important politicians and influence makers, from time to time, Lobbyist

16   C would be approached by members of the fund raising arms of the important politicians for

17   contributions to their campaigns.

18   Originally, when Lobbyist C was solicited for donations by the political campaign

19   personnel of various political candidates and office holders, he would pass the request along to

20   me and I, in turn, would seek to raise money from individual Board members. However, this

21   method proved generally inadequate to meet the need of the candidates and office holders for

22   money.

23   Lobbyist C next suggested that money be solicited from employees of the Bowl but this

24   also proved inadequate because, while Board members and employees presented with the

25   opportunity to make donations generally understood why the contributions would be in the best

26   interests of the Fiesta Bowl, they did not understand why the donations would be in their own

27   individual self-interest. I was a member of that group myself.

28

1    Lobbyist C knew that the Fiesta Bowl used a discretionary bonus to reward employees
2   that was basically controlled by me. Who would really know, Lobbyist C argued, "why" bonuses
3   were made in the amounts they were made?  Lobbyist C stated that, provided the dollar amount
4   of the political contribution obtained from a Fiesta Bowl employee did not match the bonus later
5   given to the Fiesta Bowl employee on a dollar-for-dollar basis, then as a practical matter no link
6   could be proved between the political contribution and its repayment through reimbursement by
7   a subsequent bonus. When I questioned this, Lobbyist C told me that "everyone did it."
8    Nonetheless, I knew and appreciated that (at the time) it was illegal for all corporations,
9   including all non-profit corporations, to make donations to political campaigns and that it was
10  illegal to use other people's names to pretend that contributions being made by all corporations,
11  including all non-profit corporations, to political campaigns were actually not being made by the
12  for profit or non-profit corporations.
13   I knew that since making contributions using other people's names to substitute for the
14  real contributor – the Fiesta Bowl – was illegal, I also knew that agreeing to engage in this
15  conduct with Lobbyist C and the straw-contributors, was also a crime.
16   I knew the Fiesta Bowl was reimbursing political contributions during my tenure. I made
17  the decision to solicit employees to write checks to political campaigns, and I made the decision
18  to have the Fiesta Bowl reimburse the employees. Lobbyist C usually selected the candidates.
19   I instructed Natalie Wisneski to use bonuses to reimburse employees. I made
20  contributions myself, knowing that I would be reimbursed. In particular, my wife and I each
21  made a $2100 contribution to a presidential campaign in March 2007, and in August 2007 I
22  received a $4200 check from the Fiesta Bowl to reimburse me and my wife for the contributions,
23  and I deposited it into my bank account. I had previously asked Natalie Wisneski to reimburse
24  me for approximately $11,000 in federal, state and local political contributions I made from 2000
25  to 2006, and in February 2007 she arranged to add to my bonus to provide reimbursement for
26  those contributions.
27
28

11

1    I knew that non-profit corporations cannot make campaign contributions, and I knew that

2    the Fiesta Bowl could not lawfully reimburse contributions. As a result, when I wanted to use

3    Fiesta Bowl resources to support the re-election effort of an Arizona Congressman

4    in October 2006, I instructed my assistant to talk to me directly rather than using email.

5    From approximately 2006 through 2009 the Fiesta Bowl, under my general direction,

6    reimbursed approximately $25,000 in contributions made to federal political campaigns (not

7    counting the personal reimbursements to me in February 2007 as referenced above). The $25,000

8    figure includes over $10,000 in contributions to a federal campaign that were made in the 2006

9    tax year and reimbursed in the 2007 tax year (which includes the $4200 reimbursement to me

10   in August 2007), and another $3,000 in contributions that were made in the 2007 tax year and

11   reimbursed in the 2008 tax year. The Fiesta Bowl also arranged for reimbursements for

12   contributions to state and local political campaigns, including over $3,000 for contributions

13   made to a state representative's campaign in the 2007 tax year and over $3,000 for contributions

14   made to local mayoral campaigns in the 2008 tax year. I knew that the representations that the

15   checks were coming from individual funds were false, and I knew that the Fiesta Bowl was the

16   true contributor to the campaigns. I also know that this false information was provided in

17   campaign finance reports to the Federal Election Commission.

18   I was also concerned about the non-profit status of the Fiesta Bowl organization. I knew

19   that the tax returns falsely reported that the organization made no direct or indirect political

20   expenditures, and I authorized the returns for the 2007 and 2008 tax year knowing that the Fiesta

21   Bowl had in fact directly engaged in political expenditures by soliciting and reimbursing

22   employees for their contributions to federal, state and local campaigns. I was present at

23   Executive Committee meetings when the returns were discussed, including a February 16, 2010

24   Executive Committee meeting at the Scottsdale Plaza Resort.

25   Both Lobbyist C and I knew that the Form 990 tax returns required disclosure of lobbying

26   activity because not-for-profit entities may only expend a limited amount of money on lobbying.

27   The Forms 990 submitted to the IRS falsely stated that the Fiesta Bowl did not engage in any

28   lobbying activity. I knew that Lobbyist C and others over the years lobbied heavily on behalf of

12

the Fiesta Bowl. By way of examples, in July 2007 I communicated with Lobbyist C about the Fiesta Bowl's "legislative package," and in December, 2006, at Lobbyist C's direction, I authorized a $10,000 contribution to a gubernatorial inauguration, although this money was later returned by the gubernatorial campaign when it discovered the source of the contribution.

The above-described conspiracy began at least as early as September 2003 and continued through on or about October 2010 within the District of Arizona.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and

1    I agree to be bound according to its provisions.

2         I understand that if I am granted probation or placed on supervised release by the Court,

3    the terms and conditions of such probation/supervised release are subject to modification at any

4    time. I further understand that if I violate any of the conditions of my probation/supervised

5    release, my probation/supervised release may be revoked and upon such revocation,

6    notwithstanding any other provision of this agreement, I may be required to serve a term of

7    imprisonment or my sentence otherwise may be altered.

8         This written plea agreement, and any written addenda filed as attachments to this plea

9    agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any

10   such agreements exist, shall be recorded in a separate document and may be filed with the Court

11   under seal; accordingly, additional agreements, if any, may not be in the public record.

12        I further agree that promises, including any predictions as to the Sentencing Guideline

13   range or to any Sentencing Guideline factors that will apply, made by anyone (including my

14   attorney) that are not contained within this written plea agreement, are null and void and have

15   no force and effect.

16        I am satisfied that my defense attorney has represented me in a competent manner.

17        I fully understand the terms and conditions of this plea agreement.  I am not now using

18   or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

19   would impair my ability to fully understand the terms and conditions of this plea agreement.

20   _2/24/2012_                              _John Junker_
21   Date                                     John Junker
22                                            Defendant

14

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2-24-12
Date

Stephen M. Dichter, Esq.
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

03/12/12
Date

Gary M. Restaino
Chief, Criminal Division
Frank T. Galati
Assistant U.S. Attorney

15

1

2

**ACCEPTANCE BY THE COURT**

3   3/14/14
    Date

4                                    Hon. David G. Campbell
                                     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16